GULF COLORADO & SANTA FE RAILROAD CO. vs JONES.

Opinion delivered September 19, 1896.

*1. Bill of Lading—Provision—Not Binding.*

Appellant, a railroad company received from another railro[company 224 bales of barbwire for delivery to appellee. T[wire was received in bad condition. The original railroad co[pany issued a bill of lading containing the words "Conter[and value unknown" *Held*, That as the wire was in rolls a[open to inspection and visible that this provision was in eff[a nullity.

*2. Common Carrier—Burden of Proof to Show Receipt of Goods[Damaged Condition.*

Appellee showed that he delivered certain wire to the initi[carrier in good condition. *Held*, That it then devolved up[the appellant to show by a preponderance of the evidence th[the wire was in damaged condition when it came into its p[session.

*3. Incompetent Evidence—When not Material Error.*

Where the undisputed facts are sufficient to fix liability, adm[

sion of incompetent evidence to establish unnecessary facts can not constitute reversible error.

*Incompetent Evidence—Not Material Error.*

The admission of incompetent evidence will not reverse a judgment when the fact to prove which the evidence was introduced was established by other evidence which is not disputed.

Appeal from the United States Court for the Southern District.

C. B. KILGORE, Judge.

J. T. Jones sued the Gulf, Colorado & Santa Fe Railway Co., for damages sustained to a quantity of barbed wire transported over defendant's railroad for delivery to plaintiff. Judgment for plaintiff. Defendant appeals. Affirmed.

This action originated in the United States commissioner's court at Paul's Valley, Ind. T., and was taken by appeal to the United States Court for the Southern district, sitting at Paul's Valley, where, upon a trial by a jury, a verdict and judgment were given for appellee. In the statement of his cause of action appellee alleged that appellant is common carrier of goods, and received for delivery to appellee one certain car of wire, to wit, 224 reels of barbed wire, to be delivered in good order and condition to appellee at Paul's Valley; that appellant received said wire in good order and condition; that when said wire was delivered to appellee it was tangled, the reels broken, and generally injured, to appellee's great damage and loss in the sum of $100; that said loss was occasioned by the negligence of appellant; that appellant failed to deliver said wire as agreed in good order and condition. Appellant denied all the material allegations above set out, but set up and proved that appellee ordered said wire from the Oliver Wire Company, of Pitts-

burg, Pa., and that said consignor delivered said goods an
merchandise to a carrier by water, and that on the 26th da
of December, 1894, one T. M. More, a general agent of th
Atchison, Topeka & Santa Fe Railroad Company, acting fo
the Santa Fe Route, issued a bill of lading to the appelle
acknowledging the receipt from the Oliver Wire Company o
a receipt or bill of lading of the C. P. L. Company, for th
following described packages (contents and value unknown
in apparent good order, to be transported over the line o
said company, and delivered in like good order and cond
tion to the Atchison, Topeka & Santa Fe Railroad at S
Louis, Mo.; thence, if duly delivered as aforesaid, to b
transported over the line of this railroad to Paul's Valle
Ind. T., station, and delivered in like good order to the co
signee or owner at such station. It further provided th
the responsibility of each carrier should not begin until
received the freight from the consignor or from a connec
ing carrier, and should close when it delivered the same to
connecting carrier or the consignee. It also provided th
no carrier should be responsible for loss or damage unless
was proved to have occurred during the time of its trans
over the particular carrier's line. The description in th
bill of lading of the property shipped was 224 reels bar
fence wire. Both appellant and appellee introduced this bi
of lading in evidence. It was agreed by the parties at th
trial: That the wire was shipped from Pittsburg by consi
nor to appellee at Paul's Valley, and was delivered by th
consignor to the Pittsburg & Cincinnati Packet Line, an
transported by boat to Cincinnati; thence by boat to Hende
son, Ky., by the Memphis, New Orleans & Cincinnati Pack
Company; thence by the Louisville & Nashville Railroad
East St. Louis; thence by the Terminal Railroad Associati
to St. Louis & San Francisco Railway, which is owned b
the Atchison, Topeka & Santa Fe Railroad; thence by th
said St. Louis & San Francisco Railway to Winfield, Kar

hence by the Atchison, Topeka & Santa Fe Railway to Purcell, Ind. T.; thence by appellant to Paul's Valley. That the wire was received by the St. Louis & San Francisco Railway at St. Louis on January 19th, and was delivered at Paul's Valley on January 23d following. It was shown that the wire came to Paul's Valley in a car sealed with the seal of the Louisville & Nashville Railroad, and that it was upon arrival in damaged condition, many of the spools being broken, and much of the wire unwound and tangled. It was shown to be only 22 miles from Purcell to Paul's Valley by appellant's railroad. That the track was good, and most of the country level.

*J. W. Terry, P. L. Soper* and *Ledbetter & Bledsoe,* for appellant.

1. It is clear that the rule is well established that a carrier may limit its liability by contract and that when the terms of the contract are pleaded and shown, as was done in this case by the introduction of the bill of lading that the duty devolves upon the plaintiff to show that the loss was occasioned through the fault or negligence of the carrier ed. N. J. Steam Nav. Co. vs Merchants Bank 6 How. 4; Clark vs Barnwell, 12 How. 272; York R. R. Co. vs Central R. R. Co. 3 Wall. 134; Liverpool Steam Co. vs Phenix Ins. Co. 129 U. S. 442; Myrick vs Mich. Cen. R. R. 107 U. S. 102; Hart vs Penn. Ry. Co. 112 U. S. 331; Transportation Co. vs Downer 11 Wal. 129; Railroad Co. vs Lockwood, 17 Wall. 358; Express Co. vs Caldwell, 21 Wall. 7; Railroad Co. vs Stevens, 95 U. S. 659; Clark vs Barnwell, 12 How. 280; Witting vs Railway Co. 45 A. & E. Railroad Cas. 373; Bank of Kentucky vs Adams Express Co. U. S. 174; L. R., M. R. and T. R. R. Co., 18 A. & E. R. Cas. 619.

2. It is well settled that when the liability of the

common carrier is limited by special contract, the carrier i[s]
only liable for damages and losses caused by his own neglig[ence]
ence and the burden of proving the negligence is on th[e]
party who alleges it. Steam-boat Emily vs Carney, et al,
Kan. 645; Mo. Pac. Co. vs Hailey, 35 Kan. 36; s. c. 5 Am
and Eng. R. R. Cas. 594; Sherman & Redfield on Negligenc[e]
§ 12; Whitworth vs Erie R. R. Co. 37 N. Y. 413; s. c. 6 Am
and Eng. R. R. Cas. 349; Canfield vs B. O. R. R. Co., 1[
Am. & Eng. R. R. Cas. 156; Kan Pac. R. R. Co. vs Reynolds
8 Kan. 641; Kallman vs U. S Ex. Co. 3 Kan. 205; 2 Rice o[n]
Evidence 103, 104. Whitforth, et el, vs The Erie Ry. Co.
Am. & Eng. R. R. Cas. 349; St. L. Ins. Co. vs St. L. V. etc
R. R. Co. 3 Am. & Eng. R. R. Cas. note 271, etc; T. & P
R. R. Co. vs Rogers, 3 S. W. Rep. 660; A. T. & S. F. R. R
Co. vs Richardson, 53 Kan. 157; Berg vs Ry. Co., 30 Kan
561; Western Ry. Co. vs Hardwell, 11 So. Rep. 784.

3. The court erred in instructing the jury as fol-
lows: "There are but two questions the jury will have t[o]
inquire into, one is, the amount of damage and whether fro[m]
all the evidence there appears to have been any negligenc[e]
in handling this wire " Under this instruction the jury wer[e]
justified in holding this defendant liable for any damag[e]
negligently done, by any preceeding carrier, and for an[y]
damage which might have occurred on the line of the Pitts[-]
burg & Cincinnati Packet Line. This instruction is clearl[y]
contrary to the provisions of said contract, contrary t[o]
every human law concerning the carriage of goods. Befor[e]
the defendant would be liable for the negligence of any othe[r]
carrier, it must have entered into a contract to hav[e]
transported said goods from their origin to the point [of]
destination. Myrick vs Mich. Cen. R. R. Co., 109 U. S. 10[
Block vs Merchants Dispatch Co., 6 S. W. 882.

4. It is absolutely necessary for plaintiff to prov[e]
that the goods were received by the defendant carrier i[n]

ood condition before he is entitled to recover. Smith vs N.
. Cen. Ry. Co., 43 Barb. 255; affirmed in 41 N. Y. 620;
Iarquette H. & O. R. R. Co. vs Kirkwood, 9 A. & E. R. R.
as. 85; s. c. 7 N. W. 209; Winne vs Ill. C. Ry Co. 31 Iowa
33; Brooks vs Densmore, 3 N. Y. S. 587. Where the bill of
.ding is issued to the forwarding carrier, and accepted, the
.w is clear that all the provisions of that bill of lading
.ure to each succeeding carrier. 3 A. & E. R. R. Cas. 273.
he provisions in the bill of lading that no carrier shall be
able unless the loss or damage occurred through the
egligence of its own line is clearly valid and a proper limita-
on of liability. N. Y. & T. Steamship Co. vs Wright, 26 S.
'. 106; Smith vs American Express Co. 66 N. W. 479;
utchinson on Carriers, § 767, 2nd Ed. Marquette, H. & O.
y. Co. vs Kirkwood, 9 A. & E. Ry. Cas. 85.

*L. C. Andrews,* for appellee.

1. The answer of plaintiff complained of by appel-
nt, shows that he did not know anything material to his
use, on the point of which he was testifying. The evi-
nce is not material to the plaintiff, nor is it prejudicial to
e defendant, and a cause will not be reversed where error
lied upon is not material nor prejudicial to appellant.
aney vs Caldwell, 25 Ark. 156.

2. No part of the provisions of the bill of lading are
quired under the law to establish the plaintiff's claim and
erefore its provisions when introduced cannot defeat it.
efendant introduced the bill of lading and relied upon it,
d therefore before it could claim benefit of any of its ex-
ptions the burden of proof was on it to show the state of
cts, placing the case within the exemptions of the bill of
ding. In the case cited by defendant in its brief, neglig-
ce was the basis of the action, but negligence is not any
rt of plaintiff's action in this case. Defendant sought to

evade liability by reason of its special contract. Whenever a common carrier seeks to avoid its liabilities for looses on account of the contract limiting its liability, the burden of proof, as a general rule, is upon it to show that the loss in question arose from the cause excepted in the contract. St. L. I. M. & S. Ry. Co. vs Lesser, 46 Ark. 244; 1 Bailey Onus Probandi, 5; Cravens vs Ft. S. & L. R. Ry. Co. 57 Ark. 112.

LEWIS, J. (after stating the facts.) Error is assigned upon the refusal of the court to direct a verdict for the appellant. In determining this question it is proper to keep in mind the nature of appellee's action. While informal in statement, as is usual in courts not of record, it is, in substance, an action for breach of duty by a common carrier, and not for breach of contract. In such action it was only necessary for appellee to prove that appellant received the property alleged to have been injured in sound condition, and that when delivered it was damaged. The fact of damage is not denied, but it is contended that the record does not show that the wire was in good condition when received by appellant. The bill of lading executed by the Atchison, Topeka & Santa Fe Railway Company must be construed as an acknowledgment by that company that the wire was delivered to the initial carrier in apparent good order. How otherwise could that company contract to deliver in ''like good order'' to the consignee or owner? Such acknowledgment is prima facie evidence that as to all circumstances which were open to inspection, and visible, the goods were in good order when received by the initial carrier, but is subject to rebutting proof, of which there was none in this case. Nelson vs Woodruff, 1 Black, 156; Hastings vs Pepper, 11 Pick. 43. It is true, the bill of lading, in referring to the property to be shipped, contains the phrase ''contents and value unknown,'' and that the Supreme Court, in Clark vs Barnwell, 12 How. 273, indicates that these

Bill of Lading—Conditions.

words, in connection with a declaration in a bill of lading that goods are shipped in good condition, only import the carrier's acknowledgment as to the external condition of the cases in which the goods are inclosed. This construction, however, is manifestly not applicable in this instance, where the 224 reels of barb fence wire were not unknown, but are named in the bill of lading, and were not shipped in cases, but, in the language of the court in Nelson vs Woodruff, supra, "were open to inspection, and visible." Appellant set up the provisions of this bill of lading as a defense, and introduced it in evidence, and is bound by what the instrument must be held effectual to establish, viz. that the wire was received by the first carrier in good condition. This fact being established, it devolved upon appellant to show that the wire was in damaged condition when it came into its possession. The rule is, when property is delivered to a railroad company, to be transported by that and other companies over their respective roads to its place of destination, it is enough for the owner, in an action against the company delivering the property, to recover damages for negligence, to show that he delivered the property to the first carrier in good order; and the burden is then cast upon the company delivering the goods thus injured of proving that they were not injured while in its possession; or that they came to its possession thus injured. Smith vs Railway Co., 43 Barb. 225; Laughlin vs Railway Co., 28 Wis. 204; Burwell vs Railway Co., 94 N. C. 455; Brintnall vs Railroad Co., 32 Vt. 665; Shriver vs Railroad Co., 24 Minn. 506; Mobile & O. R. Co. vs Tupelo Furniture Manuf'g Co. (Miss.) 7 South. 279; Railway Co. vs Harris (Fla.) 7 South. 544; Railway Co. vs Barnhart, 5 Tex. Civ. App. 601, 23 S. W. 801, and 24 S. W. 331; Railway Co. vs Adams, 78 Tex. 372, 14 S. W. 666; Hutch. Carr. § 761; Schouler, Bailm. & Carr. § 605. This rule is in particular cases a hardship, but it rests in the necessity of the case. Thus it is said in Laughlin vs Railway Co., cited

*Burden of Proof.*

above: "As the common carrier next in order, the defendant was bound to receive and transport the boxes when tendered. It was bound to receive them in the condition in which they were. It had no means of investigation or inquiry into their contents. It had no right to open the boxes, or examine what they contained, and, if it had, could not have detected the loss by such examination, and so have refused to receive and carry. It must take the boxes as they were, with no external signs or appearances of breaking or injury, and nothing to give warning that the contents had been previously abstracted or removed. Under these circumstances the rule or presumption of law which makes the defendant liable for the value of the goods, unless (what seems quite impossible to be done) it shows where the loss actually took place, must be supported by most clear and satisfactory reasons of policy or necessity; otherwise it should be rejected. It must be shown that greater injustice or more certain injustice will ensue from its rejection than will or may follow from its adoption. I have been, as I have said, in very considerable doubt; but examination convinces that there are such reasons, and that both principle and authority sustain the presumption. The very uncertainty which exists as to when or where the cloths were taken out, or in whose custody the boxes then were, and the difficulty or impossibility of ever ascertaining those facts, make the presumption absolutely necessary." The railroad company will, in the majority of instances, be able to show the condition of the property when it comes into its hands; the owner will rarely, if ever, be able to do so. To impose the burden upon the company is to do justice in the greater number of cases. To do so is but another expression of the rule that the party shall prove the fact in whose power it peculiarly lies.

We do not conceive that the clause in the bill of lading providing that no carrier shall be responsible for loss or

damage, if any, of the freight shipped, unless it is proved to have occurred during the time of its transit over the particular carrier's line, changes the presumptive effect which the law attaches to given facts, or requires direct proof where the law has made legal presumption sufficient. Proof is proof, whether by direct evidence or force of presumption. In other words, the fact that the wire was delivered to the initial carrier in good condition raising the presumption, equivalent to positive proof, so long as it is unrebutted, that the wire was in like condition when received by appellant, coupled with the evidence of damage when the property was delivered to the owner, proves the injury during transit over appellant's line. For these reasons, the court did not err in refusing to direct a verdict for appellant, and for the same reasons did not err in refusing the requested charge set out in the tenth assignment of error.

Common Carriers— Presumption as to condition of goods when received.

2. It is urged that the wording of the court's charge made appellant liable for the negligence of the connecting carriers, contrary to the express stipulation contained in the bill of lading. Granting that this is true, and that the stipulation against liability for the negligence of the connecting carrier is a valid one, the error becomes immaterial, in view of the conclusion already announced that the effect of the facts proven was sufficient to establish the liability of the appellant, and that the court might have so instructed the jury. The same reason disposes of the assignment of error predicated upon the action of the court in permitting appellee to testify, over objection, to the statements made in the letters of officers of different companies other than appellant's, as to the condition of the shipment when on their respective roads. Where the undisputed facts are sufficient to fix liability the admission of incompetent evidence to establish unnecessary facts cannot constitute reversible error.

Incompetent Evidence— Harmless Error.

3. The court erred in permitting the witnesses Robinson and Gibson to testify that, in their opinion, the wire was damaged $75 or $100, without proof that such witnesses were qualified, by a knowledge of the value of wire, to estimate its probable depreciation by the injuries it had suffered. Rog. Exp. Test. § 152. However, the amount of damage awarded was also established by the testimony of appellee, which was not objected to nor contradicted. We think the admission of incompetent evidence should not reverse the judgment when the fact to prove which the evidence was introduced is established by other evidence which is not disputed. Clinton vs Estes, 20 Ark. 216. Finding no reversible error, the judgment is affirmed.

SPRINGER, C. J., concurs.

*Incompetent evidence supported by competent evidence.*